UNITED STATES BANKRUPTC Y COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

DANIEL J. SUTTER and  　　　　　　　　　　　　　　Case No. 05-38115-dof
SHERYL L. SUTTER,  　　　　　　　　　　　　　　　 Chapter 7 Proceeding
　　　　　　　　　　　　　　　　　　　　　　　　　Hon. Daniel S. Opperman

　　　　Debtors.
_____/
DANIEL J. SUTTER and
SHERYL L. SUTTER,

　　　　Plaintiffs,

v.  　　　　　　　　　　　　　　　　　　　　　　Adv. Pro. No. 06-03150-dof

SAXON MORTGAGE SERVICES, INC. and
U.S. BANK NATIONAL ASSOCIATION, Trustee
for Home Equity Loan Trust 2004-HE5,

　　　　Defendants.
_____/

OPINION REGARDING PLAINTIFFS' MOTION
FOR FURTHER AND NECESSARY RELIEF

BACKGROUND FACTS AND PROCEDURAL HISTORY

This case has a long and complicated history. For the sake of consistency, the following background recitation has been copied from the Sixth Circuit Court of Appeals decision in *Sutter v. U.S. National Bank; Saxon Mortgage Services, Inc. (In re Sutter)*, 665 F.3d 722 (6th Cir. 2012).

　　A. **The World Wide Mortgage**

　　　　In September 1994, Daniel and Sheryl Sutter ("the Sutters") bought a home in Lapeer, Michigan ("the Sutter property"). Beginning sometime in the

1

mid to late 1990s, the Sutters experienced financial difficulties that ultimately resulted in the filing of a petition under Chapter 7 of the bankruptcy laws, followed by a grant of discharged issued by the Bankruptcy Court for the Eastern District of Michigan on January 30, 2004.

Prior to entry of the discharge, the Sutters attempted to refinance their existing mortgages on the subject property. Eventually, they came into contact with World Wide Financial Services, Inc. ("World Wide"), also known as LoanGiant.com. Following the entry of discharge, World Wide agreed to refinance the Sutters' loan and mortgage obligations by issuing a new mortgage on their property, to be funded by New Century Mortgage Corporation. In order to facilitate a quick closing, the Sutters requested to close the refinancing transaction in California, where they would be visiting as part of a previously scheduled vacation. World Wide agreed to this request, and arranged for a closing in Sacramento, California, on April 8, 2004.

At the April 8 closing, the Sutters signed a note payable to World Wide in the amount of $78,000. The Sutters signed a number of additional documents in connection with their refinancing, but apparently did not sign a mortgage instrument. Nevertheless, New Century provided the funds to pay off the two existing mortgages on the Sutter property, as well as allowed the Sutters to pay off additional existing debts. At some point after the closing, World Wide and New Century assigned the mortgage instrument ("the World Wide mortgage") to U.S. National Bank, with Saxon Mortgage Services, Inc. ("Saxon") as the mortgage servicer.

B. *Initial Proceedings in the Bankruptcy Court*

Within a few months of the closing, the Sutters began to fall behind on their payments on the World Wide mortgage. When [U.S. National Bank and Saxon] initiated foreclosure proceedings, the Sutters filed a Chapter 13 bankruptcy petition on November 21, 2005. Saxon filed a proof of claim in the Sutters' Chapter 13 case asserting a secured claim in the amount of $83,498.26, secured by the Sutter property. Attached to the proof of claim was the World Wide mortgage, notarized and ostensibly bearing the signatures of the Sutters. The certificate of acknowledgement on the World Wide mortgage states that "[t]he foregoing instrument was acknowledged before me [the notary] this April 8th, 2004, by Daniel J. Sutter and Sheryl L. Sutter, his wife" in the State of Michigan, County of Oakland. The mortgage was recorded with the Lapeer County, Michigan, Register of Deeds on May 25, 2004.

The Sutters filed an objection to the proof of claim, alleging that it should be disallowed because their signatures on the mortgage instrument were forged. In addition, the Sutters brought an adversary proceeding against the [U.S. National Bank and Saxon], asserting a variety of claims for relief under the Bankruptcy Code, other federal statutes, and Michigan law. Count I of the complaint sought the disallowance of the claim pursuant to 11 U.S.C. § 502(b)(1). Count II, pleaded in the alternative to Count I, sought avoidance of the World Wide mortgage pursuant to 11 U.S.C. § 544(a)(3) (the "strong-arm" provision). Both counts

2

sought a judgment "extinguishing, expunging, and avoiding all claimed interest [of U.S. National Bank and Saxon] in the Debtor's property."

At the April 24, 2007 hearing on the Sutters' adversary proceeding ("the April 2007 hearing"), the bankruptcy court found as part of its findings of fact that "the debtors have established by the necessary burden of proof that the signatures on the mortgage before the Court are not theirs." This determination was based on the uncontested fact that, while the certificate of acknowledgement states that the Sutters acknowledged their signatures on the mortgage in Michigan, the Sutters were in California on April 8, 2004, the date on which they supposedly signed it. The bankruptcy court concluded that those who acquire an interest under a forged instrument are in no better position as to title than if they had purchased with notice. Thus, the bankruptcy court granted summary judgment on Count I to the Sutters, disallowing Saxon's claim.

At the same hearing, the bankruptcy court also indicated that it would grant summary judgment to the Sutters on Count II. In addition, at the end of the hearing, the court raised the issue of whether an equitable mortgage should be imposed between [U.S. National Bank and Saxon] and the Sutters. Although the court did not render a decision on the issue, it did instruct the trustee to "monitor the case very closely" and noted that the court "reserves the right if need be to address the equitable mortgage issue." The trustee submitted a proposed order stating that the World Wide mortgage "is hereby avoided and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 551." The court ultimately signed the order tendered by the Chapter 13 trustee ("the July 2007 Order"). Neither the Sutters, U.S. National Bank, nor Saxon appealed this order.

Soon after the hearing, the Sutters filed an Amended Chapter 13 plan. The amended plan listed the [U.S. National Bank and Saxon's] claim as that of an unsecured creditor and the mortgage as void *ab initio*. On September 19, 2007, the Chapter 13 trustee filed a motion to sell the World Wide mortgage to [U.S. National Bank and Saxon] for $30,000, relying on the provision in the July 2007 Order avoiding the World Wide mortgage for the benefit of the estate. The trustee also proposed, once the sale was completed, to abandon the Sutter property, presumably so [U.S. National Bank and Saxon] could complete foreclosure proceedings on it. In return, [U.S. National Bank and Saxon] agreed to waive any additional claims against the estate. The bankruptcy court granted the trustee's motion to sell the World Wide mortgage on March 12, 2008, via a minute order.

C. *Appeals to the District Court*

The Sutters filed a notice of appeal to the District Court for the Eastern District of Michigan, pursuant to 28 U.S.C. § 158 on March 7, 2008. In a memorandum opinion and order, the district court reversed the orders of the bankruptcy court and remanded for clarification. The district court relied on the finding of facts made by the bankruptcy court at the April 2007 hearing and concluded that the bankruptcy court made "an inference that the signatures had been forged." Referencing Michigan law, the district court stated that "[w]here a deed is forged, those innocently acquiring interests under the forged deed are in

3

> no better position as to title than if they had purchased with notice." The district court noted that the bankruptcy court had suggested, but did not definitively hold, that an equitable mortgage might exist on the Sutter property, and reversed and remanded for consideration of the equitable mortgage issue. This order was not appealed.
> On remand, after a hearing, the bankruptcy court imposed an equitable mortgage on the Sutter property. The court relied on the Sutters' receipt of the benefits of the mortgage as the basis for imposing the equitable mortgage. The court also rejected the Sutters' "unclean hands" argument on the theory that "[d]ebtors did not allege or prove that U.S. Bank or Saxon engaged in any improper conduct."
> The Sutters appealed the bankruptcy court's decision to the district court. The district court once again reversed the bankruptcy court, ruling that, because "no transfer ever occurred" as a result of the World Wide mortgage, the mortgage was void *ab initio* and there could be no equitable transfer of the interest to the trustee. [An] appeal [to the Sixth Circuit Court of Appeals] followed.

*In re Sutter*, 665 F.3d at 724-27.

On January 3, 2012, the Sixth Circuit Court of Appeals affirmed the District Court's finding that the mortgage was void *ab initio* and that an equitable mortgage should not be imposed on the Sutters' property.

On August 26, 2013, the Sutters filed a Motion in this Court to Reopen their Chapter 7 case. After a hearing, the Court entered an Order Granting the Sutters' Conditional Motion to Reopen Case to Allow Filing of a Motion in Adversary Proceeding.

On January 14, 2014, the Sutters (hereinafter referred to as "Plaintiffs") filed a Corrected Motion for Further and Necessary Relief in this adversary proceeding. On January 28, 2014, U.S. National Bank and Ocwen Loan Servicing, LLC (hereinafter referred to as "Defendants") filed a Response to the Sutters' Motion. The Plaintiffs filed a Reply on February 17, 2014. The hearing originally set by the Court was adjourned at the request of the parties. Afterward, as it was possible that the Chapter 7 Trustee may have an interest in this matter, this matter was continued to allow the Trustee to investigate that interest. Subsequently, the Trustee has

determined that the Chapter 7 estate does not have an interest in this matter, so the Motion is now ripe for decision.

## ARGUMENTS

The Plaintiffs argue that they are entitled to damages of $344,000.00, plus pre and post-judgment interest; reasonable attorney fees and costs incurred in obtaining the removal of the cloud from their real estate's title; and the opportunity to conduct discovery to establish the lawful chain of ownership of the promissory note. They claim that they sought that relief at the conclusion of Counts I and II of their First Amended Complaint and that the Court has not yet ruled on these issues. The Defendants argue that (1) the Court already ruled on these issues in its July 25, 2007, Order Granting Motions for Summary Judgment, wherein the Court did not grant any damages or order Defendant to pay any attorney fees; (2) the Plaintiffs have failed to allege any basis for the requested award of damages and attorney fees; (3) the Plaintiffs have failed to allege any harm that would substantiate the damages requested; (4) the mortgage was found to be void *ab initio*, and, as a result of those rulings, the mortgage is unenforceable and not a lien against the property; and (5) the Plaintiffs' request for discovery regarding promissory note is inappropriate and not necessary in this case because the Plaintiffs can seek discovery as part of the pending Lapeer County Circuit Court action, in which Ocwen Loan Servicing, LLC is seeking enforcement of the promissory note.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a) and E.D. Mich. LR 83.50. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) (determinations of the validity, extent, or priority of liens).

The issues in this adversary proceeding arise from Title 11 of the United States Code and do not involve any matter which limits this Court's jurisdiction as detailed by the United States Supreme Court in *Stern v. Marshall*, -----U.S. ----, 131 S. Ct. 2594, 2608, 180 L.Ed.2d 475 (2011), and later by the United States Supreme Court in *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014). *See also Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

Most recently, the United States Supreme Court has determined that so long as the parties knowingly and voluntarily consent, Article III allows bankruptcy judges to adjudicate certain claims. *Wellness Int'l Network, Ltd. v. Sharif*, No. 13-935, 2015 WL 2456619 (U.S. May 26, 2015).

## APPLICABLE LAW

### A. 11 U.S.C. § 105(a)

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

### B. Mich. Comp. Laws § 565.41

Sec. 41. (1) Within the applicable time period in section 44(2) after a mortgage has been paid or otherwise satisfied, the mortgagee or the personal representative, successor, or assign of the mortgagee shall prepare a discharge of the mortgage, file the discharge with the register of deeds for the county where the mortgaged property is located, and pay the fee for recording the discharge.

### C. Mich. Comp. Laws § 565.44

Sec. 44. (1) If a mortgagee or the personal representative or assignee of the mortgagee, after full performance of the condition of the mortgage, whether before or after a breach of the mortgage, or, if the mortgage is entirely due, after a tender of the whole amount due, within the applicable time period in subsection (2) after being requested and after tender of the mortgagee's reasonable charges, refuses or neglects to discharge the mortgage as provided in this chapter or to

execute and acknowledge a certificate of discharge or release of the mortgage, the mortgagee is liable to the mortgagor or the mortgagor's heirs or assigns for $1,000.00 damages. The mortgagee is also liable for all actual damages caused by the neglect or refusal to the person who performs the condition of the mortgage or makes the tender to the mortgagee or the mortgagee's heirs or assigns, or to anyone who has an interest in the mortgaged premises. Damages under this section may be recovered in an action for money damages or to procure a discharge or release of the mortgage. The court may, in its discretion, award double costs in an action under this section.

(2) The discharge of mortgage, execution and acknowledgment of a certificate, or filing of a discharge of mortgage required by this section or section 41 shall be performed within whichever of the following time periods is applicable:

(a) For the first 2 years after the effective date of the amendatory act that added this subsection, 75 days.

(b) Beginning 2 years after the effective date of the amendatory act that added this subsection, 60 days.

## DISCUSSION

The Plaintiffs claim their request for $344,000.00 in per diem damages, plus pre and post-judgment interest, stems from their original request for a penalty at the conclusion of Counts I and II of their complaint. That request states:

> WHEREFORE, Plaintiffs respectfully request this Honorable Court enter a judgment and order against the Defendants, jointly and severally, denying their claim, extinguishing, expunging and avoiding all claimed interest in the debtor's [sic] property and **further order a $100/per day penalty for each day that the debtor's [sic] property remains encumbered by the invalid lien beyond a date to be determined by this court in which Defendant is ordered to remove its lien from the public records containing it therein**. Further, that this Court award attorney fees and cost [sic] so wrongfully incurred by Plaintiffs for having to litigate this wrongful claim and grant whatever other relief it deems just and equitable under the circumstances.

Adversary Complaint, Counts I and II, p. 17-18 (emphasis added). In their Motion for Summary Judgment, the Plaintiffs did not reiterate that request, but merely sought summary judgment in their favor and "all other relief that is just and proper."

7

On April 24, 2007, the Court held a hearing on the Motions for Summary Judgment. On May 25, 2007, Trustee's counsel filed a Notice of Presentment of Order, and the Plaintiffs filed an objection thereto on May 31, 2007. The Court held a hearing on the matter, and, on July 25, 2007, the Court entered the Order Granting Motions for Summary Judgment proposed by Trustee's counsel. The Court did not order the Defendants to pay any penalty or attorney fees to, or on behalf of, the Plaintiffs. That Order did not direct the Defendants to remove its lien from the public records or provide a date by which the Defendant was required to do so.

In January 2014, after this adversary proceeding had closed and after years of appeals, the Plaintiffs filed the pending Motion for Further and Necessary Relief. The relief the Plaintiffs seek in this Motion differs significantly from the relief originally sought in the Complaint or the Motion for Summary Judgment. In this Motion, the Plaintiffs are seeking (1) $100.00 per day for the 3,440 days between May 25, 2004, the date on which the void *ab initio* mortgage was originally recorded and October 24, 2013, the date on which the copy of the Sixth Circuit Court of Appeals decision was recorded; (2) all attorney fees incurred in connection with the removal of the cloud on their title, including $41,155.00 in fees for their former attorney's fees, which resulted in the determination that the mortgage was void *ab initio*, and an undisclosed amount in fees for their current attorney's services; and (3) post-judgment discovery with regard to the chain of possession of the promissory note.

A. Damages and Attorney Fees

In support of their position, the Plaintiffs first cite 11 U.S.C. § 105(a). The Court concludes that the application of § 105(a) is inappropriate in this case. The damages sought by the Plaintiffs are all based on Michigan law and Section 105 only allows a court to issue an order or judgment to carry out the provisions of the Bankruptcy Code.

Next, the Plaintiffs cite Mich. Comp. Laws § 565.41 and § 565.44. Section 565.44 provides, in part, that a mortgagee that "refuses or neglects to discharge the mortgage as provided in this chapter or to execute and acknowledge a certificate of discharge or release of the mortgage, the mortgagee is liable to the mortgagor or the mortgagor's heirs or assigns for $1,000.00 damages. The mortgagee is also liable for all actual damages caused by the neglect or refusal to the person who performs the condition of the mortgage or makes the tender to the mortgagee or the mortgagee's heirs or assigns, or to anyone who has an interest in the mortgaged premises."

It is questionable whether Sections 565.41 and 565.44 apply to the circumstances in this case, where a mortgage was not discharged, but was rather determined to be void *ab initio*. That issue has not been fully addressed by the parties and the Court will not ultimately decide that issue, at this time. In any event, even if those statutes are applicable, there remains a question of fact with regard to any actual damages incurred by the Plaintiffs. The Plaintiffs did not allege any actual harm or account for any actual damages in their Motion. Accordingly, the Plaintiff's Motion is denied because these issues of fact remain. However, the Court has determined that it would be appropriate to open discovery for the limited purpose of determining actual damages suffered by the Plaintiffs.[1]

## B. Discovery Regarding the Promissory Note

The Plaintiffs are also seeking the opportunity to conduct discovery to establish the chain of ownership of their promissory note. The Defendants argue that the Plaintiffs' request for discovery regarding promissory note is inappropriate and not necessary in this case because the

---

[1] Although the Court leaves the applicability of MCL 564.44 open, if that statute applies, the Plaintiffs are entitled to $1,000.00, as well as other damages.

9

06-03150-dof    Doc 119    Filed 07/15/15    Entered 07/15/15 14:52:34    Page 9 of 10

Plaintiffs can seek discovery as part of the pending Lapeer County Circuit Court action, in which Ocwen Loan Servicing, LLC is seeking enforcement of the promissory note.

If, indeed, the Plaintiffs have been, or will be, able to seek discovery on the promissory note issues in the Lapeer County Circuit Court action, the Court concludes that this proceeding is not the appropriate forum for discovery on that issue. Accordingly, the Plaintiffs' Motion is denied with regard to that request, but with the reservation that the Plaintiffs may request this relief if the Defendant's statements regarding the Lapeer County Circuit Court action are incorrect.

## CONCLUSION

For the reasons stated herein, the Court concludes that the Plaintiffs' Motion should be denied. The Court further concludes that it would be appropriate to open discovery for the purpose of determining actual damages suffered by the Plaintiffs.

**Not for publication**

**Signed on July 15, 2015**

                                        **/s/ Daniel S. Opperman**
                                        **Daniel S. Opperman**
                                        **United States Bankruptcy Judge**